IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC, | : | Case No: 4:17-CV-00289 |
| | : | |
| | : | (Judge Brann) |
| PLAINTIFF, | : | |
| | : | |
| v. | : | |
| | : | |
| PERMANENT EASEMENT FOR 2.59 ACRES, TEMPORARY EASEMENTS FOR 5.45 ACRES AND TEMPORARY ACCESS EASEMENT FOR 2.12 ACRES IN PINE GROVE TOWNSHIP, SCHUYLKILL COUNTY, PENNSYLVANIA, TAX PARCEL NUMBER 21-04-0016.000, 361 CHAPEL DRIVE, PINE GROVE, PINE GROVE TOWNSHIP, SCHUYLKILL COUNTY, PA, | : : : : : : : : : : : | |
| | : | |
| RYAN J. REGEC, | : | |
| | : | |
| | : | |
| AND ALL UNKNOWN OWNERS, | : | |
| | : | |
| DEFENDANTS. | : | |

**MEMORANDUM OPINION**

March 24, 2017

## I.  BACKGROUND

On February 15, 2017, Plaintiff, Transcontinental Gas Pipe Line Company,

LLC, hereinafter "Transco," filed a complaint in condemnation for both temporary

1

and permanent easements pursuant to Federal Rule of Civil Procedure 71.1 and the

Natural Gas Act, 15 U.S.C. § 717, *et. seq.* against the above captioned Defendants,

a parcel of land and its owner, Ryan J. Regec (hereinafter "Regec").  Previously,

on February 3, 2017, the Federal Energy Regulatory Commission, hereinafter

"FERC," granted Transco a certificate of public convenience and necessity,

hereinafter "the certificate."  Having been granted the certificate, Transco filed suit

after being unable to negotiate the amount of compensation to be paid for the right-

of-way with Regec, who demands compensation in excess of $3,000.

Transco intends to construct, operate and maintain pipeline for the Atlantic

Sunrise Project; construct new and make modifications to existing, compressor

stations; construct new and make modifications to existing, meter stations;  make

modifications to existing regulator stations; and make modifications to existing

mainline valve locations in South Carolina, North Carolina, Virginia, Maryland,

and, as largely relevant here, 199.5 miles[1] through Pennsylvania.[2]

On February 20, 2017, Transco filed a motion for partial summary judgment

and a motion for preliminary injunction.[3]  A hearing was held on these motions on

---

[1] There are 980 tracts of land involved in this project.  977 have permitted Transco access to the property to perform the necessary field survey work.  The subject property here is one of only three that have not been able to come to an agreement with Transco.  This is the only property under Middle District of Pennsylvania jurisdiction, the other two are located in the Eastern District of Pennsylvania.

[2] 15 U.S.C.A. § 717f (h)

[3] ECF Nos. 4 and 7.

March 23, 2017.[4]  After taking testimony and considering arguments from both

Transco and Regec, Transco's two motions are granted.


## II.   DISCUSSSION

### a. Partial Summary Judgment will be granted in Transco's favor as there is no genuine dispute of material fact as the Defendant admitted in his testimony the elements necessary for Transco's right of eminent domain.

Summary judgment is appropriate where "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."[5] A fact is "material" where it "might affect the outcome of the suit

under the governing law."[6]  A dispute is "genuine" where "the evidence is such

that a reasonable jury," giving credence to the evidence favoring the nonmovant

and making all inferences in the nonmovant's favor, "could return a verdict for the

nonmoving party."[7]

---

[4] The hearing was originally scheduled for March 14, 2017, because Transco was seeking a March 20, 2017 property entry date.  However, a major snowstorm, named 'Stella' was forecasted (correctly) beginning the evening of the 13th continuing through the 14th.  For the safety and interest of all involved, on the 13th, I continued the hearing to March 23, 2017.
[5] Fed. R. Civ. P. 56(a).
[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[7] *Id.*

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.[8] The moving party may satisfy this burden by either (i) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (ii) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case.[9]

Where the moving party's motion is properly supported, the nonmoving party, to avoid summary judgment in his opponent's favor, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[10] For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed must" be supported by "materials in the record" that go beyond mere allegations, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[11]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would

---

[8] *In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).

[9] *Id*. at 331.

[10] *Anderson*, 477 U.S. at 250.

[11] Fed. R. Civ. P. 56(c)(1); *see also Anderson*, 477 U.S. at 248–50.

contradict the facts identified by the movant.'"[12] Furthermore, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[13]

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but instead to determine whether there is a genuine issue for trial.[14] Credibility determinations are the province of the factfinder, not the district court.[15] Although the court may consider any materials in the record, it need only consider those materials cited.[16]

Section 717f(h) of the Natural Gas Act grants the right of eminent domain for construction of pipelines, as follows:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any

---

[12] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003).

[13] Fed. R. Civ. P. 56(e)(2).

[14] *Anderson*, 477 U.S. at 249.

[15] *BWM, Inc. v. BMW of N. Am., Inc*., 974 F.2d 1358, 1363 (3d Cir. 1992).

[16] Fed. R. Civ. P. 56(c)(3).

action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: *Provided,* That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

"To condemn the easements at issue, [the gas company] must demonstrate it holds a FERC certificate of public convenience and necessity; the rights-of-way to be condemned are necessary for the construction, operation, and maintenance of the pipeline; and it has been unable to acquire the proposed rights-of-way from the landowner"[17] and the landowner is demanding more than $3,000.   "[A] certificate of public convenience and necessity [therefore] gives its holder the ability to obtain automatically the necessary right of way through eminent domain, with the only open issue being the compensation the landowner defendant will receive in return for the easement."[18]

I find that there is no genuine issue of material fact as to Transco's right to eminent domain over the above captioned property.  In fact, during cross-examination at the March 23, 2017 hearing, Defendant Regec admitted the elements delineated in the Natural Gas Act for Transco to exercise eminent domain in the form of both temporary and permanent easements on the subject property.

---

[17] *Columbia Gas Transmission, LLC v. An Easement To Construct,* No. CV 16-1243, 2017 WL 544596, at *3 (W.D. Pa. Feb. 9, 2017)

[18] *Columbia Gas Transmission, LLC v. 1.01 Acres, More or Less in Penn Tp., York County, Pa., et. al,* 768 F.3d 300, 304 (3d Cir. 2014).

There is no question that FERC has issued a certificate of public convenience and necessity to Transco, a natural gas company as defined by the Natural Gas Act 15 U.S.C. § 717a(6).  "By issuing the Certificate [of public necessity] to [Plaintiff], FERC has determined that the Subject Property is necessary to the operation of the Pipeline[; t]his determination cannot be challenged by Defendants."[19] Accordingly, then, it has been determined by a federal regulatory agency that the rights-of-way to be condemned are necessary for the construction, operation, and maintenance of the pipeline. Finally, despite attempts through good-faith negotiations, Transco has been unable to acquire the proposed rights-of-way from the landowner, who demands compensation in excess of $3,000.[20]  Partial summary judgment will therefore be entered in favor of Transco as there remains no genuine dispute of material fact.

---

[19] *WBI Energy Transmission, Inc.*, No. CV 14-130-BLG-SPW, 2017 WL 532281, at *3 (D. Mont. Feb. 8, 2017) *citing Williston Basin Interstate Pipeline Company v. Property Interests Located in Carbon County*, M*ontana*, 2010 WL 5104991 (D. Mont. 2010) ("By issuing the Certificate of Public Convenience and Necessity under the Natural Gas Act, FERC has already determined that Defendants' property interests are necessary. Defendants have not offered any arguments to the contrary, and even if they did, such arguments would be an improper collateral attack on the FERC certificate."); *Williams Natural Gas Co. v. City of Oklahoma City* 890 F.2d 255, 262 (10th Cir. 1989); *Kansas Pipeline Co. v. 200 Foot by 250 Foot Piece of Land*, 210 F.Supp.2d 1253, 1256 (D. Kan. 2002) ("Once the holder of a FERC certificate of public convenience and necessity asks a district court to enforce its right to condemn, the findings of the FERC certificate are treated as conclusive.").
[20]Regec is demanding $300,000, which is 100 times the jurisdictional requirement set forth in the Natural Gas act.

### b.  A preliminary injunction will be entered in Transco's favor.

Because of the unique procedures associated with federal condemnation actions arising under the Natural Gas Act, Plaintiff must first establish that it has a substantive right to condemn the property at issue. Once a substantive right has been found, a court "may exercise equitable power to grant the remedy of immediate possession through the issuance of a preliminary injunction" pursuant to Federal Rule of Civil Procedure 65, which governs the granting of preliminary injunctions.[21] "The [Natural Gas Act] does not allow for "quick take" powers; in a condemnation action under the Act, we must evaluate access to property under the preliminary injunction rubric of Federal Rule of Civil Procedure 65(c)."[22]  Rule 65 provides in pertinent part:

#### (a) Preliminary Injunction.

> **(1)** *Notice.* The court may issue a preliminary injunction only on notice to the adverse party.
>
> **(2)** *Consolidating the Hearing with the Trial on the Merits.* Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the

---

[21] *E. Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808, 828 (4th Cir. 2004); *see also Constitution Pipeline Co., LLC. v. A Permanent Easement for 1.92 Acres*, 2015 WL 1219524, *2 (M.D. Pa. March 17, 2015).

[22] *Columbia Gas Transmission, LLC v. An Easement To Construct*, No. CV 16-1243, 2017 WL 544596, at *4 (W.D. Pa. Feb. 9, 2017)

> trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial
>
> . . .
>
> **(c) Security.** The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

"It is well established that 'a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial or on the merits.'"[23] "A preliminary injunction[, however,] is an extraordinary remedy never awarded as of right."[24]

Generally, a party seeking a preliminary injunction must establish four factors: (1) a reasonable probability of success on the merits of their argument; (2) irreparable harm to the movant in the absence of relief; (3) granting the preliminary injunction will not result in greater harm to the nonmoving party; and (4) the public interest favors granting the injunction.[25]  In the case at bar, the four factors favor entering the preliminary injunction as requested by Transco.

First, Transco has succeeded on the merits.  Rule 65 motions in eminent domain cases are singular. Unlike preliminary injunctions in other types of civil

---

[23] *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3d Cir. 2004) (*citing University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).

[24] *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 24 (2008).

[25] *See American Exp. Travel Related Services, Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012).

actions, those sought in condemnation cases also request an entry of judgment on the merits contemporaneously with the motion for preliminary injunction. Whereas the question in other cases is the probability of success on the merits, in this type of proceeding, a decision has been made on the merits. Therefore, given the grant of partial summary judgment in favor of Transco's substantive right to condemn, the likelihood of success on the merits is established conclusively. Accordingly, this factor favors Transco.

Second, Transco will suffer irreparable harm in the absence of injunctive relief. Transco set forth several examples of irreparable harm both in its papers and at the hearing. The first is monetary. In its brief supporting the motion, Transco contends non-possession will cost $500,000 per month, and will delay revenues of thirty-three million dollars ($33,000,000) per month because possession is necessary in order to begin conducting field surveys. The testimony of David Sztroin, hereinafter "Sztroin," the pipeline project manager for the Atlantic Sunrise Project, is consistent with Transco's assertions. Sztroin testified that anticipated revenues following the completion of this project are expected to be four-hundred million dollars ($400,000,000) per year.

FERC set several conditions precedent for Transco, one of which is that Transco conduct field surveys[26] on the subject properties. Transco contends that it cannot commence construction of the pipeline until after the remaining field surveys are completed. FERC also set 43 other pre-construction conditions that need to take place after the field surveys are complete and before construction commences. Transco will suffer substantial costs and loss of profits if it cannot begin the project as soon as possible.

The next type of irreparable harm set forth by Transco is that it will breach contracts with both subcontractors and vendors if it cannot possess the subject properties in a timely fashion. The contract with shippers is designed so that the pipeline is in service by the 2017-2018 winter heating season. Sztroin testified that the contracts with shippers were a prerequisite to filing with FERC, and breaking those contracts would cause Transco to "lose credibility." This argument also militates against Plaintiff, as Transco has acknowledged that delays in obtaining

---

[26] According to Sztroin's testimony, there are several types of field surveys. There are civil surveys, which demonstrate property boundaries, roads, streams, and the like. There are environmental surveys of threatened and endangered species, plans, wetlands, and water body surveys. There are cultural surveys, which are comprised of two distinct sub-types. Above ground cultural surveys show structures, fences, etc. Below ground cultural surveys show the "archeology."

Both Sztroin and Regec testified that Regec had initially allowed Transco on his property to being field surveying. At some point, Regec rescinded voluntary access. Sztroin believes that the only field surveys that have been completed on Regec's property are the above ground historical survey and the threatened and endangered species survey.

11

the FERC certificate have already caused it to miss that deadline, and the current anticipated completion date for the project is now July 2018.

In further support of its irreparable harm argument, Transco contends that its "in use" date will continue to be pushed back if possession is not ordered by March 31, 2017 because 12 of 43 preconditions set by FERC require re-submission to FERC based on the results of the field surveys. Moreover, Transco sets forth that the field surveys may well change the planned drawings from the engineers, and could conceivably set that process back months as well. Sztroin explained that each delay would have a "domino effect" that delays the entire project.

Transco also argues that it will experience other substantial delays in completion if it is not granted immediate access. It asserts in its briefs, and Sztroin testified consistently, that non-possession could set the project back an entire year because it must conduct surveys on endangered and threatened species, including, apparently, bog turtles, and that particular biodiversity survey is only permitted between April 15 and June 15 each year. Additionally, certain work must be completed in Pennsylvania prior to the annual October deadline for work on wild trout streams. Specifically, Transco must install in-stream supports for equipment bridges prior to October 1, 2017.

In sum, the Atlantic Sunrise Project is large in both scope and geography, spanning five states. "The magnitude of the Project requires a complex and

coordinated construction process, with work activities being performed in sequential phases"[27] Each piece of the construction puzzle depends on the prior piece timely placed. Untimeliness in one small part of this enormous project would result in a domino effect on the timeliness of all other areas of the project. This factor weighs strongly in favor of Transco.

Third, granting the preliminary injunction will not result in greater harm to the landowner. The Court is mindful that Regec made several arguments as to the harm to him. Regec is concerned about indemnification; he testified as to his future plans to develop the property; and he argued that the taking is unconstitutional.

Regec is demanding that Transco add him as an additional insured on its insurance policy. This is unnecessary. Pennsylvania law already addresses this issue of liability of easement holders.[28]   The possessor of land is liable for injury on the property, and an easement holder can be found to be the possessor of land if it possess "significant occupation and control of that land."[29]   Moreover, as it relates to the workers on the property, Pennsylvania's Worker's Compensation "Act [] provides the sole and exclusive means of recovery for all such injuries…the

---

[27] *Sabal Trail Transmission, LLC v. +/- 0.41 Acres of Land in Hamilton Cty. Florida*, No. 3:16-CV-274-TJC-JBT, 2016 WL 3188985, at *3 (M.D. Fla. June 8, 2016)
[28] *See Blackman v. Fed. Realty Inv. Trust,* 664 A.2d 139, 142 (Pa. Super. 1995).
[29] *Id.*

Act expressly bars common law actions 'for any injury or death occurring in the course of employment.'"[30]

Regec also testified that he has prospective development plans for his property.  He is concerned that Transco's easements will disrupt these future plans.[31] However, this is an argument that he both should have and did have the opportunity to make to FERC prior to the issuance of the certificate. "The district court's jurisdiction extends solely to examining the scope of the certificate and ordering condemnation of property as authorized in the certificate."[32]

Regec testified that he became aware of the project in 2014.   Transco had filed its project application March 31, 2015.  FERC sent a letter to affected landowners on October 22, 2015.  FERC issued an Environmental Impact Statement on May 5, 2016. The public comment period ran for 45 days from May 12, 2016 to June 27, 2016. FERC held four public comment meetings between

---

[30] *Hartwell v. Allied Chem. Corp.*, 320 F. Supp. 75, 77 (W.D. Pa. 1970)

[31] With all due respect to Mr. Regec, his plans are speculative, at best.  He testified that he has owned the property since 2003.  Although he has had property surveyed, developed a proposal for financing, and dug both a well and septic on one of the intended plots, he has neither subdivided the property, nor recorded his plans with the county, nor has any construction begun.  It is likely that Transco's pipeline would have little impact on his development plans should they materialize.  To the extent that they do, he will receive just compensation for that taking.

[32] *Millennium Pipeline Co. v. Certain Permanent & Temp. Easements*, 777 F. Supp. 2d 475, 481 (W.D.N.Y. 2011), *aff'd sub nom. Millennium Pipeline Co. v. Certain Permanent & Temp. Easements in (No No.) Thayer Rd., S.B.L. No. 63.00-1-24.1, Town of Erin, Cty. of Chemung, N.Y.*, 552 F. App'x 37 (2d Cir. 2014)

June 13 and 16, 2016. FERC sent landowners letters regarding two alternative pipeline routes on October 13, 2016. The additional public comment period ran for 30 days.  FERC issued a comment for a draft General Conformity Determination on November 3, 2016.  FERC issued a final Environmental Impact Statement on December 30, 2016.  On February 3, 2017 FERC authorized the Atlantic Sunrise Project and granted Transco a certificate of public convenience and necessity.

"When a property owner comes to federal court to challenge FERC's findings in the certificate of public convenience and necessity, the property owner thereby mounts what in essence is a collateral attack on that certificate."[33] "The court does not have jurisdiction to review a collateral attack on the FERC certificate."[34]  "District courts have limited jurisdiction in Natural Gas Act condemnation actions."[35] "This court's role is mere enforcement."[36]

---

[33] *Steckman Ridge GP, LLC v. Exclusive Natural Gas Storage Easement Beneath 11.078 Acres*, 2008 U.S. Dist. LEXIS 71302, 13-14 (W.D. Pa. Sept. 19, 2008) (Gibson, J.).

[34] *Williams Natural Gas Co. v. City of Okla. City*, 890 F.2d 255, 262 (10th Cir. 1989).

[35] *Sabal Trail Transmission, LLC v. +/- 0.41 Acres of Land in Hamilton Cty. Florida,* No. 3:16-CV-274-TJC-JBT, 2016 WL 3188985, at *2 (M.D. Fla. June 8, 2016), *see also* 15 U.S.C.A. § 717r(b); *Guardian Pipeline, L.L.C. v. 529.42 Acres of Land*, 210 F. Supp. 2d 971, 974 (N.D. Ill. 2002) ("The validity and conditions of the FERC Certificate cannot be collaterally attacked in district court."); *Williams Natural Gas Co. v. City of Oklahoma City*, 890 F.2d 255, 262 (10th Cir.1989), cert. denied, 497 U.S. 1003, 110 S.Ct. 3236, 111 L.Ed.2d 747 (1990) ("Review of the validity of the certificate is the exclusive province of the appropriate court of appeals.").

Regec also argued that the taking is unconstitutional.  It is not.  "The mere exercise of the sovereign's power of eminent domain is not offensive to due process."[37]  It is hornbook law that "a State may transfer property from one private party to another if future "use by the public" is the purpose of the taking."[38]  Here, there is no violation of Regec's *First*, *Fifth, and Fourteenth Amendment* rights as the Natural Gas Act is constitutional as "affecting interstate commerce," "development satisfies the "public use" requirement of the Fifth Amendment,"[39] and Regec had notice and opportunity to be heard before FERC and will have further notice and opportunity to be heard before this Court as to the amount of compensation to be determined.[40]   Moreover, "The Fifth Amendment guarantees

---

[36] *Id. citing Tennessee Gas Pipeline Co. v. Massachusetts Bay Transportation Authority,* 2 F.Supp.2d 106, 110 (D.Mass.1998).

[37] *Collier v. City of Springdale*, 733 F.2d 1311, 1313 (8th Cir. 1984).

[38] *Kelo v. City of New London, Conn.*, 545 U.S. 469, 477, 125 S. Ct. 2655, 2661, 162 L. Ed. 2d 439 (2005).

[39] *Id.* at 477.

[40] *See Public Service Co. of North Carolina, Inc. v. Federal Energy Regulatory Commission*, 587 F.2d 716 (5th Cir. 1979) (the state can engage in takings), *and see Transcontinental Gas Pipe Line Corp. v. Hackensack Meadowlands Development Commission*, 464 F.2d 1358 (3d Cir. 1972) *certiorari denied* 93 S.Ct. 909, 409 U.S. 1118, 34 L.Ed.2d 701 (Interstate transmission and sale of natural gas is within the regulatory ambit of U.S.C.A.Const. Art. 1, § 8, cl. 3), *and see   Saturn Oil & Gas Co. v. Federal Power Com'n,* 250 F.2d 61, (10th Cir. 1957) *certiorari denied* 78 S.Ct. 542, 355 U.S. 956, 2 L.Ed.2d 532 (Natural Gas Act does not contravene *Fifth Amendment*), *and see National Fuel Gas Supply Corp. v. Town of Wales,* 904 F.Supp.2d 324 (W.D.N.Y. 2012) (no violation of due process when notice and opportunity to be heard provided prior to taking).

the landowners just compensation for their land no matter when the condemnor takes possession."[41]

For all of these reasons, this factor favors Transco.

Fourth, granting the preliminary injunction is in the public interest as it will give the general public access to natural gas from the Marcellus Shale deposits for heating their homes and businesses.  Stzroin testified that this pipeline will transport 1.7 million decotherms of natural gas to the North East and Mid Atlantic markets.  "Congress passed the Natural Gas Act and gave gas companies condemnation power to insure that consumers would have access to an adequate supply of natural gas at reasonable prices."[42]  This factor, therefore, also favors Transco.

In sum, the motion for preliminary injunction will be granted.  It is commonplace for district courts to order immediate possession after FERC has taken a lengthy period of time determining whether or not to issue a certificate of public convenience and necessity.  "District courts in a number of jurisdictions

---

[41] *E. Tennessee Nat. Gas Co. v. Sage*, 361 F.3d 808, 829 (4th Cir. 2004).

[42] E. *Tennessee Nat. Gas Co. v. Sage*, 361 F.3d at 830, *citing Clark v. Gulf Oil Corp.,* 570 F.2d 1138, 1145–46 (3d Cir.1977); *Fla. Power & Light Co. v. Federal Energy Regulatory Comm'n*, 598 F.2d 370, 379 (5th Cir.1979); *Public Serv. Comm'n of Ky. v. Federal Energy Regulatory Comm'n*, 610 F.2d 439, 442–43 (6th Cir.1979).

grant immediate possession in the form of a preliminary injunction to a gas

company that has established its right to condemn under the [Natural Gas Act]."[43]

### c. A bond will be Ordered.

The Constitution "does not provide or require that compensation be paid in

advance of the occupancy of the land to be taken. But the owner is entitled to

reasonable, certain, and adequate provision for obtaining compensation before his

---

[43] *Tennessee Nat. Gas Co. v. Sage*, 361 F.3d at 827 *citing Northwest Pipeline Corp. v. The 20' by 1,430' Pipeline Right of Way*, 197 F.Supp.2d 1241, 1245 (E.D.Wash.2002)("[w]here there is no dispute about the validity of [the gas company's] actual right to the easement," denying authority to grant immediate possession "would produce an absurd result"); *Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, 210 F.Supp.2d 976, 979 (N.D.Ill.2002)(immediate possession proper when condemnation order has been entered and preliminary injunction standards have been satisfied); *N. Border Pipeline Co. v. 64.111 Acres of Land*, 125 F.Supp.2d 299, 301 (N.D.Ill.2000)(same); *see also N. Border Pipeline Co. v. 127.79 Acres of Land,* 520 F.Supp. 170, 173 (D.N.D.1981) ("the Court believes the circumstances of this case warrant the exercise of inherent powers"); *Williston Basin Interstate Pipeline Co. v. Easement and Right–of–Way Across .152 Acres of Land*, 2003 WL 21524816 (D.N.D.2003)(same); *Tenn. Gas Pipeline Co. v. New England Power, Inc.*, 6 F.Supp.2d 102, 104 (D.Mass.1998)(same); *USG Pipeline Co. v. 1.74 Acres*, 1 F.Supp.2d 816, 825–26 (E.D.Tenn.1998)(same); *Kern River Gas Transmission Co. v. Clark County*, 757 F.Supp. 1110, 1117 (D.Nev.1990)(same); *Humphries v. Williams Natural Gas Co*., 48 F.Supp.2d 1276, 1280 (D.Kan.1999)("[I]t is apparently well settled that the district court does have the equitable power to grant immediate entry and possession [under the Natural Gas Act]."); *Rivers Electric Co., Inc. v. 4.6 Acres of Land*, 731 F.Supp. 83, 87 (N.D.N.Y.1990)(granting immediate possession under a statute similar to the Natural Gas Act). *Cf. Commercial Station Post Office, Inc. v. United States*, 48 F.2d 183, 184–85 (8th Cir.1931)(holding that government officer who exercises statutory authority to file condemnation action may take immediate possession of the property even though there is no express provision authorizing pre-judgment possession).

occupancy is disturbed."[44] Accordingly, Transco will be ordered to post a surety bond with the Clerk of Court on or before March 30, 2017.

Transco appraised the value of the 10.2 acres to be condemned as $8,100. Regec concludes that $300,000 is perhaps a more appropriate amount, as he believes that one-half of the total 78 acres of property will be taken by Transco. Regec's value is excessive; Transco is not seeking to condemn one-half his property but merely one-eighth of his property. Transco is offering to post a bond that is four times the appraised value of the property that it is seeking to condemn. I find the proposed bond amount of $32,400 to be reasonable. "We fully understand that condemnation often forces landowners to part with land that they would prefer to keep for many reasons, including sentimental ones."[45] "However, the Supreme Court long ago recognized that "in view of the liability of all property to condemnation for the common good, loss to the owner of nontransferable values deriving from his unique need for property or idiosyncratic attachment to it ... is properly treated as part of the burden of common citizenship.""[46]

---

[44] *Cherokee Nation v. S. Kan. Ry. Co*., 135 U.S. 641, 659 (1890).
[45] *Id.*
[46] *Id citing Kimball Laundry Co. v. United States*, 338 U.S. 1, 5, (1949).

### d.  The Order will contain an enforcement mechanism

Transco indicates that third parties have expressed their intention to engage in civil disobedience. Transco acknowledged that Regec himself has not indicated any intention to do so.

Third parties are hereby on notice that I have the authority and "inherent power to enforce compliance with [its] lawful orders through civil contempt."[47] Defendant or any third parties who are contemplating violating the terms of this Memorandum Opinion and the accompanying Order should understand and appreciate that the Order contains an enforcement mechanism so that any person unwise enough to violate its terms shall be haled into Court by the United States Marshals Service and a contempt hearing conducted.[48]

## III.   CONCLUSION

An Order will issue this date granting Plaintiffs Motions for Partial Summary Judgment and for Preliminary Injunction.  Plaintiff will be directed to post a surety bond with the Clerk of Court.  Commencing March 31, 2017, pursuant to the Order of the Federal Regulatory Commission dated February 3, 2017, Plaintiff Transcontinental Gas Pipe Line Company, LLC is granted access to, possession of and entry to the rights of way allowed under that Order for the above captioned

---

[47] *Cooper v. Aaron*, 358 U.S. 1 (1958); *and see  Shillitani v. United States*, 384 U.S. 364 (1966).
[48]*Roe v. Operation Rescue*, 919 F.2d 857, 868 (3d Cir. 1990)

property.   The Order will include an enforcement mechanism to deter those who

seek to obstruct Plaintiff.


BY THE COURT:


s/ Matthew W. Brann
Matthew W. Brann
United States District Judge